IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER PARTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-1212-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

Following administrative denial of her application for Supplemental Security Income benefits under Title XVI of the Social Security Act, Jennifer Parten ("Parten" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court concludes the Commissioner's decision denying disability insurance benefits and supplemental security income benefits should be reversed and remanded.

**I. NATURE OF THE CASE**

Parten requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed.  The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence).  This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla —  i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).  If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence

preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

 The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's Supplemental Security Income ("SSI") is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[1]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3).  However, despite the fact they are separate programs, the law and regulations governing a claim for SSI and the general disability insurance benefits program ("DIB")[2] are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson*

---

[1] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] The Social Security Act's DIB provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.  *See* 42 U.S.C. § 423(a).  DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

*v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled.  20 C.F.R. §§ 404.1520, 416.920; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015).  The ALJ determines:

(1)     Whether the claimant is currently engaged in substantial gainful activity;

(2)     Whether the claimant has a severe impairment or combination of impairments;

(3)     Whether the impairment meets or exceeds one of the impairments in the listings;[3]

(4)     Whether the claimant can perform past relevant work; and

(5)     Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  When a claimant is found disabled – or not – at an early step, the remaining steps are not considered.

---

[3]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4.  *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39.   A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden.  Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4).  RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations.  *Phillips*, 357 F.3d at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  In order to do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or

---

[4]   *See* 20 C.F.R. Pt. 404 Subpt. P, App. 2

"Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id.* A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV.  BACKGROUND AND PROCEEDINGS

On March 18, 2011, Parten filed an application for SSI alleging disability beginning on June 1, 2008. (Tr. 148-155).[5] Parten claimed disability due to bipolar disorder, schizoaffective disorder, personality disorder, obsessive compulsive disorder, and panic disorder. (Tr. 148-155, 164-172, 197, 300-324). Following initial administrative denial of her claim, Parten requested a hearing before an administrative law judge ("ALJ") (Tr. 95-100, 103-105). ALJ Bruce W. MacKenzie ("the ALJ") convened a video evidentiary hearing on February 25, 2013. (Tr. 56-91). Parten was represented by an attorney. The ALJ received direct testimony from Parten and a Vocational Expert. The remaining evidentiary record consisted of medical reports from treating sources, a non-treating, examining consultant's report, and a psychiatric review technique and a mental residual functional capacity assessment completed by a medical consultant who reviewed Parten's medical records upon request of Alabama Disability Determination Services.[6] The ALJ rendered an unfavorable verdict on May 30, 2013. (Tr. 40-52). On October 27, 2014, the Appeals Council denied Parten's request for review (Tr. 22-28). This Social Security Appeal

---

[5]   At the hearing, the claimant's attorney amended the alleged onset date to March 18, 2011 – the application date. (Tr. 48, 61)

[6]   "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a).

was filed on December 10, 2014. *See* Doc. 1, Complaint.

## V. ADMINISTRATIVE DECISION

Employing the five step process, the ALJ found that Parten has not engaged in substantial gainful activity since the March 18, 2011 application date (Step 1); has severe impairments – both physical and mental (Step 2)[7]; the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Parten cannot perform her past relevant work (Step 4). (Tr. 45-50). As such, Parten met her prima facie case for disability and the burden shifted to the Commissioner to show there are a significant number of jobs in the national economy which she can perform.

At Step Four, the ALJ found Parten had the RFC to perform medium work with a number of exceptions. The ALJ articulated the following exceptions:

> no climbing of ropes, ladders, or scaffolds; frequent stooping, kneeling, crouching, and crawling; no exposure to hazards such as dangerous tools or machinery or unprotected heights; and limited to occasional operation of a motor vehicle. The claimant is limited to occasional exposure to vibration and moderate noise levels. She should avoid all exposure to pulmonary irritants. The claimant is limited to short, simple, and routine work activity; is able to accept constructive non-confrontational criticism; is able to work in small group settings; and is able to accept changes in the work place setting if introduced gradually and infrequently. She would be unable to perform assembly line work with production rate pace, but could perform goal-oriented work. Any time of task can be accommodated by normal breaks.

(Tr. 48).

As a result of these limitations, the ALJ determined Parten could not perform past relevant work. (Tr. 50). Therefore, the ALJ moved to Step Five to determine whether Parten could perform other jobs in the national economy and determined there are jobs that exist in significant numbers in the national economy that Parten could perform. (Tr. 51). The ALJ

---

[7] The ALJ found the following "severe" impairments: a bipolar disorder, a personality disorder, obsessive compulsive disorder, a panic disorder, endometriosis, obesity, and asthma. (Tr. 45).

utilized the Medical-Vocational Rules and Vocational Expert (VE) testimony regarding jobs in existing in the national economy which Parten could perform. The ALJ provided several hypotheticals to the VE and utilized some VE provided several examples of jobs which Parten could perform such as cleaner, kitchen helper, and store laborer. (Tr. 51). Consequently, the ALJ found Parten has not been disabled since the alleged onset date. (Tr. 52).

### VI. ISSUES

Parten identifies three issues on appeal:

(1) Whether the ALJ failed to give significant weight to the opinion of Plaintiff's treating physicians and instead relief on the mental residual functional capacity assessment of the non-examining consultative doctor.

(2) Whether substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were no fully credible.

(3) Whether the Appeals Council should have vacated the ALJ's decision in light of new evidence supporting Plaintiff's claim for disability benefits.

Pl. Br. at p. 1.

The Commissioner re-words the issue as follows:

(1) Whether the Administrative Law Judge properly considered the doctors' opinions in assessing Plaintiff's residual functional capacity.

(2) Whether substantial evidence supports the Administrative Law Judge's credibility determination that plaintiff's allegations of disabling limitations were not entirely credible.

(3) Whether Plaintiff failed to show that evidence submitted to the appeals council affected the substantial evidence supporting the Administrative Law Judge's decision.

Def. Br. at p. 1. Regardless of the wording, the Commissioner does address the issues raised by Plaintiff in the brief.

## VII.  DISCUSSION AND ANALYSIS

### A.     Whether the ALJ properly evaluated the medical opinions of the record

Parten alleges the ALJ rejected her treating physician's opinion and the consulting examining physician and instead only accepts the opinions a non-treating/non-examining consultant.  The regulations give preference to the opinion of the treating physicians.  20 C.F.R. § 404.1527(d)(1)-(2); *Winschel*, 631 F.3d at 1179 ("Absent good cause, an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.") (internal citations and quotations omitted).  However, "the ALJ has the discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician..[but] if he follows that course of action, he must show 'good cause' for his decision."  *Gholston v. Barnhart*, 347 F.Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Phillips*, 357 F.3d at 1240 (quoting *Lewis,* 125 F.3d at 1440) (The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.").  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  In other words, the Eleventh Circuit has found good cause for discounting a treating physician's report when the report "is not accompanied by objective medical evidence or is wholly conclusory."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir.1991)).  Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records[.]" *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing *Lewis*, 125 F.3d at 1440). However, the ALJ must clearly articulate his reasons

for disregarding the opinion of a treating physician. *Winschel*, 631 F.3d at 1179. Thus, "[w]hen the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Schuhardt v. Astrue*, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

In the case at hand, the ALJ rejected not only Parten's treating psychologist (Dr. Sterling Taylor, Ph.D.), but also the opinion of Dr. Donald Blanton – a consultative examining psychologist who performed an examination at the request of the Commissioner. The only opinion the ALJ gave any credit was a non-examining consultant – Dr. M. Hope Jackson. While not an error outright, it does raise some skepticism when the ALJ relied solely upon the only psychologist who did not actually examine the claimant. Thus, the Court turns to the "good cause" analysis. As noted above, good cause exists in one of three instances. The Court reviewed the entire medical record and even reviewing in the light most favorable to the ALJ's determination, the Court still cannot reach the conclusion that the ALJ adequately articulately valid reasons for rejecting the treating physician and consulting examiners' opinions. In short, substantial evidence does not support the ALJ's reasons for not giving the treating physician's opinion controlling weight.

Specifically, the records indicate a long history of significant mental health issues. Schizoaffective bipolar disorder, obsessive compulsive disorder, and panic disorder have been documented from at least 2008. Parten had several suicide attempts, suicidal thoughts, instances of self-inflicted pain/mutilation, auditory hallucinations, and panic attacks. The ALJ acknowledges all of these, but still rejects the opinions of the psychologists who treated and/or examined her. The ALJ rejects the opinions when he states the following:

> These opinions are afforded little weight. These opinions appear to be based <u>solely</u> on the claimant's report and are not supported by objective evidence or other evidence within the medical record. There is no indication in the record that claimant has any difficulty interacting socially and no indication that the claimant would have problems interacting with supervisors. She may be limited in ability to understand, remember, and carry out complex instructions, but pursuing an online bachelor's degree in psychology requires the claimant to be able to handle detailed instructions, and probably even more complex instructions. There is also no justification for the finding that claimant has marked or extreme limitations in ability to respond to customary work pressures, deal with changes in a work setting, use judgment in detailed or complex work related decisions; maintain attention and concentration for periods of at least two hours; and in estimated constrictions of interests. She has interests in psychology and swimming, is able to concentrate for class and video games, and there is no objective assessment regarding the claimant's ability to respond to customary work pressures. These assessments appear to be mostly unsupported by the balance of the medical record and are afforded little weight.
>
> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is exceptionally difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

ALJ opinion (Tr. 50). The Court will address these two different reasons for rejection.

With regard to the ALJ's second paragraph articulating the rationale for rejection. The Court finds this line of reasoning to be as speculative in the current case. While the Court acknowledges that this line of reasoning is certainly a potential reality in the world of disability claims, the substantial evidence here cannot support the application *in the case at hand*. First, the ALJ not only rejected the treating physician, but also the consulting psychologist actually requested by the Commissioner. A consulting psychologist who is performing an examination on behalf of the agency does not have loyalty to the patient. Rather, they are performing a service at the request of the Commissioner of Social Security. Parten was referred to Dr. Blanton

by the Social Security Commissioner – she did not seek him out. Dr. Blanton had no ongoing doctor-patient relationship and therefore no need to avoid tension or please the patient. In addition, though Dr. Taylor was a treating physician, the evidence shows that, due to lack of insurance and financial resources, Parten had difficulties maintaining a regular treatment schedule. Though the Commissioner asserts this means Dr. Taylor's opinion is unreliable, it also conversely indicates Dr. Taylor likely does not have the same doctor-patient pressures speculatively discussed and relied upon by the ALJ.

The Commissioner asserts the lack of recent treatment also means Dr. Taylor was not a treating psychologist. Social Security regulations define treating source as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, *or has provided you*, with medical treatment or evaluation and who has, *or has had*, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, *or have seen*, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R § 416.902 (emphasis added). The Commissioner's argues that Dr. Taylor is not a treating source because Dr. Taylor's significant treatment occurred in 2008. However, the definition itself notes that a past treating relationship constitutes a treating source. The historical value may simply be considered in the weight given to an opinion without recent treatment. It does not merit outright rejection. Further, the ALJ did not state the reason for the rejection of Dr. Taylor's opinion was because of the gap in treatment. Rather, the ALJ stated he rejected the

opinion because the medical evidence did not support the conclusions he reached.

The opinion the ALJ relied upon was by the nonexamining consultant Dr. Jackson. However, the ALJ states "[t]here is no indication in the record that claimant has any difficulty interacting socially and no indication that the claimant would have problems interacting with supervisors." Yet, even Dr. Jackson found Parten has: (1) moderate difficulties in maintaining social functioning, (2) moderate difficulties in maintaining concentration, persistence, or pace, (3) moderately limited ability to understand and remember detailed instructions and to carry out detailed instructions, (4) moderately limited ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors, and (5) moderately limited ability to respond to changes in the work setting. (Tr. 399, 403-404). Finally, Dr. Jackson concludes with "contact with the general public should be infrequent. Supervision and feedback should be non-confrontational in nature. Changes in work routine should be minimal." (Tr. 405). Though the ALJ addresses these in his RFC, this specifically contradicts his findings when rejecting Dr. Taylor and Dr. Blanton. In one place the ALJ acknowledges the social/supervisory challenges, yet when rejecting Dr. Taylor and Dr. Blanton's opinions, the ALJ states there no indication in the record that Parten has difficult with social interaction and interaction with supervisors. In short, the ALJ's opinion is contradictory.

The ALJ commits error when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians. *Wind v. Barnhart*, 133 Fed. Appx. 684, 691 (11th Cir. 2005); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986).

**B.     ALJ's finding that Claimant's subjective complaints were not fully credible**

The Court also finds error in that the Commissioner's opinion is not supported by substantial evidence as the ALJ failed to address the issue of whether Plaintiff could afford to

seek treatment. Parten clearly discusses her lack of financial resources and insurance. (Tr. 71, 409). Specifically, at the hearing, Parten stated she did not have insurance and her parents paid for everything. (Tr. 71). Initially her mother paid for her treatment, but then her dad stopped the financial support because he felt the money was too much. *Id*. It is well established in this Circuit that poverty can excuse non-compliance with taking medication and even the failure to seek treatment. *See, e.g. Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("To a poor person, a medicine that he cannot afford to buy does not exist.").

Though this case is somewhat distinguishable in that the ALJ did not base his opinion *solely* on noncompliance, it is an issue the Court finds the ALJ should have discussed especially as he was based his credibility finding on the fact Parten was not fully compliant with her bipolar medication. *See* ALJ opinion (Tr. 49) ("In addition, the claimant testified that she stopped taking her medication on her own, and she told the consultative examiner that she takes her medication every now and then. This is strong indication that the claimant's alleged bipolar disorder is not [as] severe as alleged and that the claimant is not compliant with treatment."). The ALJ makes no reference in his opinion to Parten's lack of financial resources which was raised both in the hearing and in Dr. Blanton's report. Tr. 71, 409. Therefore, "the ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." *Brown v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 813, 817 (citing Social Security Regulation 96-7 at 7, 1996 WL 374186, 1996 SSR LEXIS 4).

Therefore, this failure to address financial resources and ability to seek treatment also constitutes legal error which merits remand.

Finally, the ALJ notes Parten's activities and uses them to discredit her. As the Court has already determined the case merits remand on this issue, the court shall pretermit lengthy discussion on the matter. However, the ALJ did not discuss that persons who suffer from chronic mental health issues have good days and bad days. Those with chronic mental health impairments "may commonly have [their lives] structured in such a way as to minimize [] stress and reduce [] symptoms and signs. In such a case, [the claimant] may be much more impaired for work than [their] symptoms and signs would indicate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E).

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes substantial evidence did not support the ALJ's rejection of Dr. Taylor and Dr. Blanton's opinions and also in not addressing Plaintiff's poverty status when finding her complaints not credible. Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. A separate order will be entered.

DONE this 29th of February, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE